**Samuel GOLDBERG, Plaintiff,**

**v.**

**DELAWARE OLDS, INC. and Bank of Delaware, Defendants.**

**Civ. A. No. 86–48–JJF.**

United States District Court,
D. Delaware.

Oct. 2, 1987.

---

**32.** *See Duchesne v. Sugarman,* 566 F.2d 817 (2d Cir.1977).

Ralph Steven Goldberg (argued), Atlanta, Ga., and Douglas A. Shachtman, Wilmington, Del., for plaintiff.

Jeremy J. Abelson (argued), of the Bank of Delaware, and Daniel F. Lindley, of Potter, Anderson & Corroon, Wilmington, Del., for defendants.

## OPINION

FARNAN, District Judge.

This case arises under the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601–1693r (1982). The Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337 and 15 U.S.C. § 1640(e). Currently before the Court are cross-motions for summary judgment. The issue presented is whether, in a Conditional Sales Contract, an assignee-bank's right of set-off against deposits may be disclosed in the "Federal Box". For the reasons discussed below, I conclude that such information may be placed in the Federal Box. Summary judgment shall therefore be entered in favor of codefendants Delaware Olds, Inc. ("Delaware Olds") and Bank of Delaware ("the Bank").

### I. FACTUAL BACKGROUND.

The material facts are not in dispute. Plaintiff Samuel E. Goldberg initiated this action after purchasing a car from Delaware Olds. According to the Conditional Sales Contract ("the Contract"), which was executed by Mr. & Mrs. Goldberg and a representative of Delaware Olds, the cash price of the car was $12,623. As evidenced by the Contract, the Goldbergs financed $11,234—the unpaid balance of the purchase price—with Delaware Olds. Delaware Olds immediately assigned the Contract to the Bank.

The Contract which memorialized the transaction was written on a standard form provided by the Bank. At issue in this lawsuit is the special, boxed-in section of the Contract entitled "DISCLOSURES REQUIRED BY FEDERAL LAW AND MADE BY SELLER" ("the Federal Box"). Under TILA, the Federal Box is a conspicuously segregated portion of the Contract containing federally-mandated disclosures. In the Contract between the Goldbergs and Delaware Olds, the Federal Box included the federally-required disclosures, as well as a disclosure that states: "If this CONTRACT is assigned to Bank of Delaware, it will have the right of set-off against deposits owed by it to BUYER." D.I. # 14—Defendants' Answering Brief, at A1.

The Goldbergs paid the entire amount due under the Contract within one year and shortly thereafter plaintiff Samuel Goldberg initiated this action against Delaware Olds, claiming that the disclosure in the Federal Box of the Bank's right of set-off violated the TILA and entitled plaintiff to an award of statutory damages. Pursuant to Fed.R.Civ.P. 14, Delaware Olds sought relief against the Bank as a third-party defendant, requesting indemnification from the Bank should Delaware Olds be held liable to the plaintiff. D.I. # 3—Answer and Third-Party Complaint, at ¶¶ 15, 16. Because the Contract at issue was drafted entirely by the Bank and supplied to Delaware Olds as a form for use in originating automobile financing on behalf of the Bank, the Bank sought to intervene as a party defendant. D.I. # 13—Motion to Realign. The Court granted the Bank's Motion to Realign and the Bank now appears in this action as a party defendant.

### II. CROSS–MOTIONS FOR SUMMARY JUDGMENT.

#### A. *Standard of Review.*

Rule 56(c), which governs the entry of summary judgment, states that the Court may properly grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ. P. 56(c). *See Graham v. F.B. Leopold Co., Inc.,* 779 F.2d 170, 172 (3rd Cir.1985). All

parties agree there are no material factual disputes. Since the issues presented in this case are of a purely legal nature, the case is ripe for decision.

### B. *The Statutory Scheme.*

 In characterizing the nature and purpose of TILA, our Court of Appeals made the following observation in *Thomka v. A.Z. Chevrolet, Inc.,* 619 F.2d 246 (3rd Cir.1980):

> The Truth-in-Lending Act was passed to aid the unsophisticated consumer so that he would not be easily misled as to the total costs of financing.... The act seeks to assure a more meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various terms available to him and avoid the uninformed use of credit.... The act mandates that certain disclosures must be made and how they should be made in finance agreements. Enforcement is achieved in part by a system of strict liability in favor of consumers who have secured financing when this standard is not met. 15 U.S.C. § 1640(a).... [T]he Federal Reserve Board is given the authority to promulgate regulations to carry out these provisions. 15 U.S.C. § 1604. [T]he Board has issued several regulations collectively referred to as Regulation Z.

*Thomka, supra,* 619 F.2d at 248. In 1980, Congress made substantial revisions to TILA by enacting the Truth In Lending Simplification and Reform Act ("Simplification Act"). Pub.L. 96–221, 94 Stat. 168 (1980). The Simplification Act was implemented by a revised Regulation Z issued by the Board of Governors of the Federal Reserve in 1981. 12 C.F.R. § 226.1 et seq. Following close on the heels of the Simplification Act and revised Regulation Z came the Board's Official Staff Commentary on the regulation. Under the statute, creditors who adhere to the Commentaries are immune from liability if their actions are later determined to have violated TILA. 15 U.S.C. § 1640(f). Axiomatically, these Staff Commentaries are entitled to great deference unless they are shown to be "demonstrably irrational." *Ford Motor Cred-it Co. v. Milhollin,* 444 U.S. 555, 564, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980) (Federal Reserve Board Staff Opinions construing the Act should be dispositive unless "demonstrably irrational").

The TILA sets forth specific mandatory requirements relating to the form in which disclosures are to be made in closed-end credit transactions such as the one involved in this action. 15 U.S.C. § 1638(b)(1). Certain information is to be "conspicuously segregated from all other terms, data or information provided in connection with a transaction...." *Id.* In the Official Staff Commentary the Board expressed a preference for segregating this information by outlining it in a box, by use of bold print dividing lines, or by some other method calculated to set off the mandatory disclosures from the rest of the Contract. Official Staff Commentary No. 17(a)(1)–2. *See also* 12 C.F.R. § 226.17. The information which must be segregated from the rest of the Contract language is set forth in 12 C.F.R. § 226.18. The regulations mandate that the Federal Box "shall not contain any information not directly related to the disclosures required under § 226.18." 12 C.F.R. § 226.17(a)(1). The Bank contends that the disclosure of its right of set-off was required under TILA and Regulation Z as a security interest and, alternatively, that the information is directly related to the mandatory disclosure of a creditor's security interest and therefore permissible under 12 C.F.R. § 226.17(a). *See* D.I. #14— Defendants' Answering Brief, at 9. The plaintiff, on the other hand, argues that a right of set-off is not a security interest, nor is it information directly related to a security interest. In the alternative, plaintiff maintains that even if the Court is of the opinion that the Bank's right of set-off was a security interest, it was not a security interest of the non-bank creditor, Delaware Olds. I will discuss each of these contentions separately.

First, is the bank's right of set-off against a borrower's deposit accounts within the scope of the term "security interest"?

■ A review of the limited case law available and other authorities indicate that a bank's right of set-off against a depositer's account is not, within the ordinary understanding of the term, a security interest that would require disclosure under the TILA. In *Fletcher v. Rhode Island Hospital Trust Nat'l Bank*, 496 F.2d 927, 935 (1st Cir.1974), the Court of Appeals for the First Circuit held that a bank's right of set-off against a borrower's deposit accounts was not a security interest requiring disclosure under 15 U.S.C. § 1637(a)(7).[1] In *Fletcher*, the plaintiffs argued that the Bank had violated the TILA by failing to disclose its right of set-off as a security interest, *Fletcher*, 496 F.2d at 933, while in this litigation, the plaintiffs argue that defendants violated the TILA by having disclosed the bank's right of set-off in the Federal Box. In any event, both cases present the same issue. In considering the nature of a bank's right of set-off, the Circuit Court quoted with approval the remarks of the District Court:

> In my opinion it is palpably clear the status of a depository bank, vis a vis deposited funds, is that of a debtor, not that of a secured creditor. The indebtedness of the plaintiffs, and that of others similarly situated, arose from transactions completely unrelated to the deposit of their money in the respective defendant banks. With regard to this indebtedness the banks are unsecured creditors. This is evidenced by the fact that the depositor is at all times free to withdraw his funds from the bank. The exercise by a bank of its long-regarded right to apply deposited funds against such indebtedness is nothing more than the setting-off of mutual, unsecured debts. To accept the plaintiffs' contention that the right to set-off is 'in the nature of a security interest' would be to stretch the meaning of that term beyond reasonable limits.

496 F.2d at 934.

While the reasoning of the *Fletcher* decision alone is certainly persuasive, it is also helpful to review the relevant statutes and accompanying commentary.

Revised Regulation Z defines the term "security interest" as follows:

> An interest in property that secures performance of a consumer credit obligation and that is recognized by state or federal law. It does not include incidental interest such as interest in proceeds, accessions, additions, fixtures, insurance proceeds ... premium rebates, or interests in after acquired property. For purposes of disclosure under Section ... 226.18 [closed-end disclosures], the term does not include an interest that arises solely by operation of law....

Regulation Z, § 226.2(a)(25).

This definition of security interest is narrower than the definition set forth in the earlier Regulation Z, § 226.2(gg). The commentators acknowledge that a fair amount of post-revision confusion continues to surround the status of a right of set-off vis-a-vis security interest disclosures. *See, e.g.*, R. Rohner & F. Miller, *The Law of Truth In Lending*, 5–74 (1984); Marrinan & Schellie, Truth In Lending Simplification, 37 *Bus. Law.* 1297, 1307 (1982). These commentators note that an early version of the proposed Commentary stated that set-offs were security interests and should be disclosed accordingly. Proposed Commentary, § 2(a)(25)–4, 46 Fed.Reg. 28, 560 (1981). However, the Board ultimately declined to include the "right of set-off" in subsequent proposed Commentaries or in the final text. Commentary, § 2(a)(25)–4; R. Clontz, *Truth In Lending Manual*, 1–63 (5th Ed.1982); Marrinan & Schellie, *supra*, 37 *Bus. Law.*, at 1307. Consequently, the disclosure of a right of set-off is not specifically treated in the Commentary. At least one commentator has stated that by not including set-off in the commentary to Regulation Z, it was intended that creditors rely on state law to determine whether it is disclosable in the Federal Box. I have

---

1. The *Fletcher* decision predated the Simplification Act. Title 15 U.S.C. § 1637(a)(7), the subject of the *Fletcher* case, is now codified, as amended, at 15 U.S.C. § 1637(a)(6). Thus, the *Fletcher* Court was unable to consider whether, under the Simplification Act, a bank *may* disclose the right of set-off within the Federal Box.

examined Delaware law and have found nothing to indicate that the right of set-off is to be treated as either a statutory or non-statutory security interest. At best Delaware law is unclear.

Since I have concluded that the right of set-off is not a security interest and, therefore, the bank may not disclose set-off as a security interest in the Federal Box, it is necessary to discuss the issue of whether the bank's right of set-off is "directly related" to any of those items that must be placed in the Federal Box. I conclude that it is.

The regulations delineate the terms that must be segregated on the agreement and set forth separately in the Federal Box. 12 C.F.R. § 226.18. Included in the list of information to be segregated is "the fact that the creditor has a or will acquire a security interest in the property purchased as part of the transaction, or in other property identified by item or type." 12 C.F.R. § 226.18(m). 12 C.F.R. § 226.17(a)(1) states that the Federal Box "shall not contain any information not *directly related* to the disclosures required under § 226.18" (emphasis added, footnotes omitted). The purpose of this change was to avoid "information overload." Since the bank's right to set-off is not a security interest, the issue becomes whether the right to set-off is "directly related" to the security interest assigned by Delaware Olds to the Bank.

The regulations do not define the term "directly related." The official commentary, however, offers several examples of what might be considered "directly related." *See* FRB Official Commentary at Reg. Z § 226.17(a)(1), ¶ 5. This list is meant to provide examples only and is not intended to be exclusive. Among the items of information considered "directly related" are a description of a grace period after which a late payment charge will be imposed, and the conditions under which a demand feature may be exercised. Both of these examples involve notice to the debtor of extra charges or method of payment.

Although a bank's right to set-off is not included in the examples given, set-off certainly seems analogous to and possibly sub-

sumed in the broad concept of method of payment. For example, when a security interest is assigned by Delaware Olds to the Bank, the set-off provision becomes a method of payment that may be used if the debtor defaults on his or her obligation to the Bank. It seems to me that this is information that is helpful and important to consumers and assists them in understanding more fully the remedies that may be available to their creditor.

I have no doubt, given the Congress' intent, that it is preferable to include set-off information in the Federal Box rather than hide it in the cavernous small print so common in the notorious debtor-creditor financing agreements of days past. In the present case, there is not even a hint that the Bank's inclusion of the right to set-off statement was intended to obscure the information required in the box, but it is plain its inclusion was designed to straightforwardly inform consumers of a significant remedy that the Bank might exercise on the occurrence of a default.

### III. CONCLUSION.

For these reasons, I hold that the security interest Delaware Olds obtained in the Goldberg vehicle and later assigned to the Bank must be disclosed in the Federal Box and that the information concerning the Bank's right of set-off is directly related to the security interest of Delaware Olds and, therefore, the right of set-off may be disclosed in the box.

Finally, having reached the conclusion that the Bank's right of set-off is disclosable because it is directly related to mandatory information, there is no need to address plaintiff's remaining contention. Accordingly, I will enter an Order granting defendants' Motion for Summary Judgment and denying plaintiff's.