**In re Jay D. LOOS and Theresa Marie Loos, Debtors.**

**Bankruptcy No. B-94-10077-PHX-GBN.**

United States Bankruptcy Court, D. Arizona.

Nov. 21, 1995.

**496**

James B. Ball, Poli & Ball, Ltd., Phoenix, AZ, for First Interstate Bank of Arizona, N.A.

Russell A. Brown, Brown & Sunkin, P.C., Chandler, AZ, for Debtors Jay D. Loos and Theresa Marie Loos.

Albert M. Rau, Trustee, Phoenix, AZ.

## ORDER

GEORGE B. NIELSEN, Jr., Chief Judge.

The objection of First Interstate Bank of Arizona to the treatment of its secured claim in debtors' Chapter 13 plan is submitted for decision. The issue is whether a premium refund of a vehicle service contract is included in the valuation of the secured creditor's interest in the vehicle. The facts in this case indicate it should.

## I

On February 4, 1994, debtors purchased a 1993 Geo Storm automobile from Brown & Brown Chevrolet, Inc. The sales agreement was assigned to First Interstate Bank the same day.

The contract in the Truth–In Lending Disclosure ("TILA") box states: "*Security:* You are giving a security interest in the motor vehicle being purchased." *See* Exhibit A at 1, Docket No. 20.

Just below the TILA box, the sales agreement provides: "Other charges imposed by Seller includes: a—Vehicle Service Contract (Term) *TRANS CITY SERVICE CORP.* [amts.]"

Paragraph 5(b) of the agreement refers to "Payments to Insurance Companies for Insurance Premiums." No amounts are indicated as so paid.

Below the TILA disclosure there is another paragraph describing the security:

> *Security Interest:* To protect us if you do not pay as promised, or if you break some other promise in this Contract, you give us a purchase money security interest in the motor vehicle.... The security interest covers all equipment, accessories, and parts that you add to the motor vehicle within 10 days of the date of this Contract. You also give us a security interest in the proceeds of any physical damage insurance policy on the vehicle and any insurance premiums we finance which are refunded. This security interest does not cover any other debts you owe us....

Debtors note the agreement provides buyer should obtain from seller a copy of any warranty or service contract offered as part of the transaction. First Interstate Bank asserts debtors defaulted on their payments on October 6, 1994. A bankruptcy case was filed on November 14, 1994.

Creditor says at the time the case was filed, unpaid principal amounted to $14,-727.53. The parties agree the value of the vehicle for Chapter 13 plan purposes is $8,975.00. First Interstate believes the unused vehicle service contract proceeds of $621.27 should be added to the value of the vehicle. Debtors disagree. The bank ob-

jects to plan confirmation, arguing if the vehicle is surrendered, creditor would cancel the service contract and receive an unused premium refund.

## II

Debtors deny that creditor has a security interest in the service contract. The TILA disclosure box does not state there is a security interest in anything other than the vehicle. TILA requires a clear, conspicuous disclosure of what security interests are created, debtors argue.

Second, the paragraph describing the security interest, located in the middle of the agreement, identifies an interest in insurance premiums. The vehicle service contract is not insurance, debtors believe. They argue the insurance premiums described in the document concern credit and property insurance only. Debtors view the vehicle service contract as of a different nature than credit or insurance coverage.

## III

### A.

■ The first argument, that the contract violates TILA, is asserted without citation to statutory, regulatory or case law authority. Debtors are incorrect.

■ The purpose of TILA is to promote the informed use of credit by consumers. *Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 218, 101 S.Ct. 2266, 2274, 68 L.Ed.2d 783 (1981). To effectuate this purpose, the Act is liberally construed in the Ninth Circuit. *Jackson v. Grant*, 890 F.2d 118, 120 (9th Cir.1989). Even technical or minor violations impose liability on the creditor. *Id.*

The issue is whether TILA is violated because creditor failed to properly disclose a security interest in premium refunds of an insurance contract.

> The TILA sets forth specific mandatory requirements relating to the form in which disclosures are to be made.... Certain information is to be 'conspicuously segregated from all other terms, data or information provided in connection with a transaction....' The information which

must be segregated from the rest of the Contract language is set forth in 12 C.F.R. § 226.18. The regulations mandate that the Federal Box 'shall not contain any information not directly related to the disclosures required under § 226.18.'

*Goldberg v. Delaware Olds, Inc.*, 670 F.Supp. 125, 127 (D.Del.1987); *aff'd*, 845 F.2d 1011 (3d Cir.1988).

Among the required disclosures to be conspicuously segregated from other terms is "[w]here the credit is secured, a statement that a security interest has been taken in (A) the property which is purchased as part of the credit transaction, or (B) property not purchased as part of the credit transaction identified by item or type." 15 U.S.C. § 1638(a)(9).

The term "security interest" is not defined in the Act. *Anderson Bros. Ford v. Valencia*, 452 U.S. at 212, 101 S.Ct. at 2271. However, the implementing regulations define the term as follows:

> ' "*Security interest*" ' means an interest in property that secures performance of a consumer credit obligation and that is recognized by state or federal law. It does not include incidental interests such as interests in proceeds, accessions, additions, fixtures, insurance proceeds (whether or not the creditor is a loss payee or beneficiary), premium rebates, or interests in after-acquired property. For purposes of disclosure under §§ 226.6 and 226.18, the term does not include an interest that arises solely by operation of law. However, for purposes of the right of rescission under §§ 226.15 and 226.23, the term does include interests that arise solely by operation of law.

*Id.* at 212, 101 S.Ct. at 2271, citing § 226.2(a)(25) of Regulation Z. 12 C.F.R. § 226.2(a)(25).

After noting that the above definition changed the prior definition of "security interest" in some respects, the Supreme Court noted there was no indication the definition was changed as to unearned insurance premiums. *Anderson Bros. Ford* at 212, 101 S.Ct. at 2271.

The Court distinguished an incidental interest in unearned insurance premiums from a security interest that must be disclosed.

'[T]here is a different between an incidental interest and an interest that is the essence of the transaction. For example, when an automobile is financed, the insurance proceeds are incidental to the primary security interest, the automobile. The creditor's interest in such insurance would not be a security interest under the regulation. On the other hand, when the credit transaction is the financing of an insurance policy, the creditor's interest in that policy is just like a purchase money security interest and would be disclosed as a security interest.'

*Id.* at 214, 101 S.Ct. at 2272, (citing revised Regulation Z, 46 Fed.Reg. 20853 (1981)).

The Court concluded:

[I]n light of the proposed official staff interpretation of Regulation Z, the revised regulation defining a "security interest," and the Board's commentary on the difference between an "incidental interest" in unearned insurance premiums and a "security interest," it is evident that the Board does not consider the creditor's interest in unearned insurance premiums in a transaction such as this one to be a "security interest" that must be disclosed under TILA.

*Id.* at 220, 101 S.Ct. at 2275.

Relying on the purposes of the Act, on Federal Reserve Board constructions of the term "security interest" and on the legislative history, a circuit court also concluded that an assignment of unearned insurance premiums was not a security interest under TILA required to be disclosed. *Kinser v. Ford Motor Credit Company*, 670 F.2d 659, 661 (6th Cir.1982).

Here, the interest that was the essence of the transaction was financing the automobile. The security interest in the automobile is disclosed in the "federal box." Outside the box, contract language identifies a security interest in "the proceeds of any physical damage insurance policy on the vehicle and in any insurance premiums we finance which are refunded...."

■ This is an incidental interest that does not require disclosure. This is not a security interest under section 226.2(a)(25), as interpreted in *Anderson Bros.* Finally, even if there had been a TILA violation, debtors offer no authority that creditor would lose its security interest.

**B.**

■ Debtors' second argument is that the agreement cannot be construed to include an assignment of the service contract. The language of the contract reads: "You also give us a security interest in the proceeds of any physical damage insurance policy on the vehicle and any insurance premiums we finance which are refunded."

The bank did finance the service contract. The contract language can easily be construed as an insurance contract. The service agreement has a $25.00 deductible and insures the owner against certain harm: i.e., vehicle repair costs. Debtors fail to offer authority to the contrary.

**IV**

■ Given that the bank has a security interest in the premiums, should this be included in the vehicle's valuation?

In *General Motors Acceptance Corporation v. Mitchell (In re Mitchell)*, 954 F.2d 557 (9th Cir.1992), *cert. denied*, 506 U.S. 908, 113 S.Ct. 303, 121 L.Ed.2d 226 (1992), debtors purchased a vehicle. The price included an amount for a mechanical service agreement. The sale contract created a security interest in the vehicle and in all insurance premiums or service contract premiums financed. *Id.* at 559. The Bankruptcy Appellate Panel held the vehicle should be valued at a wholesale price and creditor lacked a security interest in the service contract. Creditor did hold an interest in any returned premiums upon cancellation of that contract. *Id.*

The Court of Appeals agreed that the service contract was not included in the allowed secured claim. *Id.* at 561. The court noted GMAC's claim is secured by an interest in

both the automobile and the service contract premiums. The contract language did not create a security interest in the service contract itself. The lower court therefore correctly held that if, on remand, GMAC could establish entitlement to premiums, such refunds would be included in the valuation. GMAC was not entitled to have the value of the contract itself included in the valuation. *Id.* at 561.

This is the present situation. The bank has a security interest in returned premiums but not the service contract itself. The bank must show entitlement to a premium refund after repossession before that sum is included in collateral valuation.

The bank claims entitlement to such a refund. It attaches the affidavit of Lisa Craig, who says she is a repossession and sales supervisor. She states, as a matter of course, when the bank repossesses a vehicle for which they financed a service contract, the contract is cancelled and the bank obtains a refund of unused premiums. This testimony is uncontradicted. Affidavit at 3 and 4, Exhibit B, Docket No. 20.

Based on this affidavit, the bank has shown it can claim a refund from the insurer if it repossesses a vehicle and that it could do so here. Creditor has met the requirement of *Mitchell,* establishing entitlement to a premium refund following repossession. Therefore, the unrefunded premiums are included in the valuation of the vehicle. Creditor's objection to confirmation of debtors' plan is sustained.